**UNITED STATES of America, Appellee,**

v.

**Okey CHAMPION, also known as Burdette Williams, Appellant.**

**Docket No. 00–1031.**

United States Court of Appeals, Second Circuit.

Argued Nov. 22, 2000.

Decided Dec. 8, 2000.

*Id.* at 350–51, 465 N.E.2d at 806, 477 N.Y.S.2d at 86 (citations omitted).

Leonard J. Levenson, New York, NY, for appellant.

Thomas Firestone, Assistant United States Attorney for Loretta E. Lynch, United States Attorney for the Eastern District of New York (Jo Ann M. Navickas, Assistant United States Attorney, on the brief) for appellee.

Before: CALABRESI, and PARKER, Circuit Judges, and TRAGER, District Judge.*

PER CURIAM:

Okey Champion ("Champion" or "appellant") appeals from a judgment of the United States District Court for the Eastern District of New York (Dearie, *J.*), convicting him on counts of conspiracy to possess heroin with intent to distribute and attempted possession of heroin with intent to distribute. On appeal, Champion contends that he received ineffective assistance of counsel. He also argues for re-

* The Honorable David G. Trager, of the United States District Court for the Eastern District of New York, sitting by designation.

versal on the ground that the judge, rather than the jury, determined the amount of drugs involved in his crimes. This, he argues, violates the Supreme Court's recent decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Finally, appellant challenges his sentence of 120 months in prison. We affirm.

## BACKGROUND

On March 12, 1998 Akindale Amos, a Nigerian farmer, traveled from Ghana to JFK Airport in New York. Amos was arrested at the airport after customs officials discovered 2.6 kilograms of heroin strapped to his body. Amos immediately began cooperating with government officials, and explained that he had planned to proceed to a Ramada Inn near the airport, and there deliver the drugs to a contact. Agents accompanied Amos to the hotel, checked into a room next to his, and awaited the arrival of the contact. When Champion came to the hotel and knocked on the door to Amos's room, he was arrested.

Champion persistently denied his involvement in any criminal activity and proceeded to trial before a jury. He was convicted. After his conviction, Champion began cooperating with the government. As part of his cooperation, he admitted that he was guilty of the crimes for which he had been convicted and offered information about various ongoing narcotics trafficking activities.

Although prosecutors had not entered into a formal agreement with Champion, the government, in light of appellant's cooperation, submitted a letter to the district court requesting a downward departure pursuant to United States Sentencing Guidelines § 5K1.1.[1] At his sentencing hearing, Champion argued that he had received ineffective assistance of counsel from Kunle Ogundele, a Nigerian attorney who had been hired to examine a Yoruba speaking expert witness. Champion's claim was that his lead attorney, Leonard Levenson, had recommended that he accept a plea bargain offered by the government, according to which he would have received a sentence of 30–37 months. Ogundele, however, allegedly told Champion that Levenson could not be trusted because he was White and because he might be in league with the prosecutors. Champion claimed that Ogundele urged him to reject the plea offer, and insisted, contrary to the advice of Levenson, that Champion's chances of succeeding at trial were quite good. The district court conducted a two-day evidentiary hearing in order to gather information with respect to Champion's claim of ineffective assistance.

At his sentencing hearing, appellant also challenged two recommendations included in the Pre–Sentence Report ("PSR"). First, he argued that, due to his post-conviction admission of guilt, he merited a two-point reduction in his offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility. Second, he contended that, given his cooperation with the government, he was entitled to safety valve relief under U.S.S.G. § 5C1.2.

The district court rejected Champion's ineffective assistance claim and explained that Ogundele's testimony—in which he denied having advised Champion to reject a plea agreement and denied suggesting either that Levenson could not be trusted because of his race or that Levenson was in cahoots with the government—was "credible." In contrast, the court found that Champion's testimony, as well as that of other witnesses supporting the ineffective assistance claim, was "not credible in any way."

The district court also concluded that an enhancement for obstruction of justice was

---

1. The information provided by Champion led to the arrest of another drug courier and the seizure of 1.2 kilograms of heroin.

warranted and that a reduction for acceptance of responsibility was not.

With respect to the safety valve question, Judge Dearie explained that he was inclined to deem appellant eligible for § 5C1.2 relief, but that, given his decision to depart downward from Champion's applicable Guidelines range, the issue "was not quite as critical as [it] otherwise might be." The district court, thereafter, sentenced Champion to 120 months in prison.

## DISCUSSION

In his appeal to this court, Champion reiterates the above arguments and adds a claim based on *Apprendi v. New Jersey.*

### Ineffective Assistance

■ "[A] defendant's Sixth Amendment right to counsel attaches at all critical stages in the proceedings after the initiation of formal charges, which has been held to include plea negotiations." *United States v. Gordon,* 156 F.3d 376, 379 (2d Cir.1998) (internal quotation marks and citation omitted). "A criminal defendant must satisfy a two prong test in order to show ineffective assistance of counsel: (1) that counsel's representation fell below an objective standard of reasonableness measured by the prevailing professional norms; and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different." *Id.* (citing *Strickland v. Washington,* 466 U.S. 668, 688–90, 694, 466 U.S. 668, 80 L.Ed.2d 674 (1984)).

■ The district court concluded that Champion had failed to satisfy the first prong of the *Strickland* test. It relied heavily on its credibility assessments in reaching this conclusion. "[A] reviewing court owe[s] particularly strong deference where the district court premises its findings on credibility determinations." *Ma-*

thie v. Fries, 121 F.3d 808, 812 (2d Cir. 1997) (internal quotation marks omitted). The district court's decision does not constitute clear error, and, therefore, appellant's ineffective assistance claim fails.

### The Apprendi Claim

■ Appellant also contends that his right to a trial by jury was violated by virtue of the fact that the judge, at sentencing, determined the quantity of drugs involved in his crime by a preponderance of the evidence. Champion argues that the Supreme Court's recent decision in *Apprendi v. New Jersey* requires such determinations to be made by a jury beyond a reasonable doubt.

In *Apprendi,* the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi;* 120 S.Ct. at 2362–63. Champion's sentence of 120 months fell below the statutory maximum under 21 U.S.C. § 841, regardless of the quantity of drugs for which he was held responsible.[2] Still, appellant contends that the reasoning underlying *Apprendi* requires that a finding with respect to drug quantity be left to the jury even under these circumstances. This is because the determination of the quantity of drugs involved in appellant's crime established a mandatory minimum sentence of ten years. In appellant's view, the Constitution mandates that any effect on the range of applicable punishment come about only as a result of a conclusion made by a jury beyond a reasonable doubt. *See Apprendi,* 120 S.Ct. at 2372 (Thomas, J., concurring).

Though the question of whether, after *Apprendi,* a judge's fact findings that create a higher mandatory minimum violate a defendant's right to a jury trial is an open

---

**2.** 21 U.S.C. § 841(b) provides for sentences of ten years to life, five to forty years, or zero to twenty years, depending on the type and quantity of drugs sold. Thus, Champion's

sentence of 120 months does not exceed the maximum penalty under any of these provisions.

one in this circuit, that question is not before us. In this case, at trial, Champion stipulated to the quantity of drugs involved in his crime. Thus, even if the district court erred by arrogating to itself the quantity-determining function, any such error was surely harmless. Under the stipulation, a jury could not have found differently.[3] Because Champion stipulated to the fact that his crime involved over 2.6 kilograms of heroin, under 21 U.S.C. § 841(b)(1)(A), he would have been subject to a mandatory minimum sentence of 10 years, in any event.

*Safety Valve*

■ Champion's challenge to the district court's decision with respect to the safety valve is predicated on Federal Rule of Criminal Procedure 32, which provides that:

> At the sentencing hearing, the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence, and must rule on any unresolved objections to the presentence report.... For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing.

Fed R.Crim.P. 32(c)(1). Appellant contends that the district court "fail[ed] to give sufficient reason for granting or denying safety valve consideration, [and] utterly failed to make a ruling of any kind." Because, the district court allegedly did not make a specific finding with respect to the safety valve issue, in appellant's view, remand for resentencing is necessary.

The argument is without merit. A careful reading of the transcript of the sentencing hearing reveals that Judge Dearie concluded that appellant was eligible for safety valve relief. Still, Judge Dearie explained that Champion's eligibility was irrelevant because the district court's decision to depart downward, under U.S.S.G. § 5K1.1, afforded it the latitude necessary to sentence Champion to the term it deemed appropriate, regardless of the safety valve. This decision was surely within the district court's discretion.

*Acceptance of Responsibility*

■ Finally, appellant contends that the district court improperly denied him a two-point offense level reduction for acceptance of responsibility. Champion argues that the district court improperly concluded that the two-level enhancement it had ordered as a result of appellant's obstruction of justice was fundamentally inconsistent with an offense level reduction for acceptance of responsibility. Appellant emphasizes that Application Note 4 to U.S.S.G. § 3E1.1 indicates that there may be "extraordinary cases in which adjustments under both §§ 3C1.1 [obstruction] and 3E1.1 [acceptance] ... apply."

■ We review the district court's application of the Sentencing Guidelines *de novo, see, e.g., United States v. Greer,* 223 F.3d 41, 59 (2d Cir.2000), and its findings of fact for clear error. *See, e.g., United States v. Smith,* 215 F.3d 237, 239 (2d Cir.2000). The record does not suggest that the district court believed that a reduction under § 3E1.1 and an enhancement under § 3C1.1 are mutually exclusive. Instead, it indicates that, in the district court's view, the events that triggered the two-level obstruction enhancement in this case—Champion's submission of a perjured affidavit and suborning perjury—also provided a sound basis on which to deny any acceptance of responsibility reduction. There is, therefore, no basis for concluding that the district court misapplied the Guidelines.

---

**3.** In this respect, Champion was in the same position as one who pleads guilty to possession of narcotics. Under these conditions, a separate finding of guilt by a jury using the "reasonable doubt" standard, is not necessary

The district court's findings of fact are, moreover, unassailable. Appellant has conceded that he made false statements at the time of his arrest, submitted a perjurious affidavit, and had two witnesses testify falsely on his behalf. Notwithstanding the fact that, after his conviction, appellant confessed his guilt and provided information to the police, the district court's conclusion that Champion did not deserve a reduction under § 3E1.1 was undoubtedly not clear error.

## CONCLUSION

The judgment of the district court is AFFIRMED.